IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY

**TERRY DOWDELL,**

       **Petitioner,**

v.

                                 Case No. 5:14-cv-25032

**JOE COAKLEY, Warden,**
**FCI Beckley,**

       **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

On August 25, 2014, the petitioner, who is presently incarcerated at the Federal Correctional Institution in Beckley, West Virginia, and proceeding *pro se*, filed an Application for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1). This matter is assigned to the Honorable Irene C. Berger, United States District Judge and, by Standing Order, it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY AND PETITIONER'S REQUEST FOR RELIEF

The petitioner is serving a 180-month term of imprisonment, following his conviction in the United States District Court for the Western District of Virginia of securities and wire fraud. *United States v. Dowdell*, Case No. 3:02CR00107 (W.D. Va.). The petitioner was sentenced on June 23, 2004. According to the Federal Bureau of

Prison's ("BOP") inmate locator, www.bop.gov/inmateloc, the petitioner's scheduled release date is July 16, 2017.

On August 25, 2014, the petitioner filed the instant Application for a Writ of Habeas Corpus under 28 U.S.C. § 2241, with exhibits (ECF No. 1), and a Memorandum in support thereof (ECF No. 2). Because it plainly appears from the petition and exhibits that the petitioner is not entitled to habeas corpus relief, no response has been required by the respondent.

The petition states that, on September 1, 2013, the petitioner filed a request for a Reduction in Sentence ("RIS") (also known as "compassionate release"), pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), and BOP Program Statement 5050.49 (released on August 12, 2013). According to the petition, the petitioner's RIS request was denied by the former Warden, Joel Ziegler, on November 6, 2013. (ECF No. 1 at 3). The petitioner then exhausted the administrative remedy process. (*Id.* at 3-4).

The petitioner asserts that the BOP's denial of his RIS request was arbitrary and capricious. (ECF No. 2 at 6). In support of his assertion, the petitioner heavily relies upon an article in *USA Today* concerning the BOP's alleged "poor management and haphazard implementation" of the RIS regulations and agency policy directives, which resulted in a formal review by the Department of Justice's Office of the Inspector General ("OIG"). The petitioner contends that, while implementing some of the OIG's recommendations, the August 12, 2013 Program Statement 5050.49 (hereinafter "the Policy") still results in *ad hoc* decision making. (*Id.* at 4-6).

The petitioner's Memorandum further states:

2

> As argued herein, Dowdell qualifies for a RIS under both Sections 3b and 4b of the Policy. Section 3b allows RIS consideration for inmates with a debilitated medical condition. Dowdell qualifies under this section because his acute leg swelling confines him "to bed or chair more than 50% of waking hours." Under Section 4b, Dowdell fits all five of the listed criteria; he is 67 years old, suffers from chronic and serious medical conditions, has physical health that substantially diminishes his ability to function in a correctional facility, conventional medical treatment promises no substantial improvement to his medical condition, and he has now served 67.2% of his sentence.

(*Id.* at 7).

The petition states that the petitioner's RIS request, which was submitted on August 23, 2013, consisted of a package containing a letter to the Warden (ECF No. 1, Ex. C), a memorandum in support (Ex. D), a Release Plan (Ex. E), and a Request to Staff directed to his case manager, Mr. Carter (Ex. F). The petitioner asserts that his RIS request was not given to Mr. Carter until September 1, 2013, and was not reviewed and denied by Warden Ziegler until November 6, 2013. The petitioner contends that this failure to timely process his request highlights one of the areas of criticism noted in the OIG's report. (ECF No. 2 at 8).

The petition further states that, although the petitioner's RIS request itemized seven chronic conditions, five of which manifested post-sentencing, his chronic cellulitis and its aftereffects (severe lymphedema, the swelling in both legs, and chronic kidney disease) are significant to his present challenge. (ECF No. 2 at 9). The petition details the petitioner's medical history concerning chronic cellulitis, including emergency treatment at Beckley Allegheny Regional Hospital ("BAR-H"), followed by his transfer to the Federal Medical Center in Devens, Massachusetts ("FMC-Devens") for 14 months. (*Id.* at 9-10). The petition states "[t]hree years later, Dowdell continues to experience

severe 'dependent lymphedema of bilateral lower extremeties,' the BOP's description of the severe swelling of both legs which Dowdell must deal with daily. His condition continues to significant[ly] disrupt Dowdell's way of life day-to-day, lowering his quality of life." (*Id.* at 10). The petitioner also asserts that, during the course of his treatment at BAR-H, his kidney function substantially declined, and that he continues to suffer from chronic kidney disease. (*Id.* at 10-11).

The remainder of the petitioner's Memorandum in Support of his section 2241 petition addresses the denial of his RIS request and the administrative remedy process, and continues to be critical of the timeframes and procedures for review at each appeal level. (ECF No. 2, *passim*). The Memorandum further notes:

> P.S. 5050.49 and 28 C.F.R. § 571.63a requires the warden to include a statement of reasons in the written notice of denial. Regulation 571.63a is the sum total of Section 9 of BOP Policy. As such, the Bureau chose to not define what must be contained in such statement of reasons, again furthering the systematic use of *ad hoc* decision-making. In this instance, Warden Ziegler's *ad hoc* improvisation was to simply state, "Medical staff have (sic) determined you do not meet the criteria . . . ." The Warden's failure prompted Dowdell to file a request under the Freedom of Information Act ("FOI"), which accompanies this motion, and marked as Exhibit I. On January 24, 2014, the BOP responded Exhibit J. Twenty-four pages of information was furnished, with two pages withheld, as per the cover letter in the exhibit.

(ECF No. 2 at 12). The petitioner takes specific issue with a memorandum from Dr. Dominic McLain to Warden Ziegler summarizing a medical records review for the petitioner's RIS request and finding that the petitioner's physical health does not substantially diminish his ability to function in a correctional facility. (ECF No. 1, Ex. M). The petitioner contends that, of the six "diagnosed" conditions mentioned in the memorandum, three are incorrect, and his list of medications was not updated. The

4

petitioner contends that Dr. McLain used only this inaccurate medication summary to formulate his conclusion. (ECF No. 2 at 14-15).

Concerning the denial of the petitioner's BP-9 administrative remedy, the petition states in pertinent part:

> In the appeal, Dowdell argued: (a) He does not "have cellulitis" as stated in the denial; (b) he has experienced multiple cases of cellulitis, the worse [sic; worst] case exacerbated by medical staff's refusal to treat the condition over four days; (c) such failure resulted in a two week hospitalization followed by a lengthy rehab period; (4) 40 months later the leg remains black and swollen making institutional life difficult; (e) of course he has kidney function, and what the RIS stated was that the treatment to save his leg irreversibly damaged his kidneys to the point he suffers chronic kidney disease; (f) in remedy Dowdell asked to be furnished a copy of the doctor's report stating he does not qualify for a RIS, and that his RIS request be approved and submitted to the Central Office.
>
> On December 19, 2013, Warden Ziegler denied the BP-9 by issuing Exhibit L. In the denial, the Warden simply parroted the statements contained in Dr. McLain's memoranda, Exhibit M. In the denial the Warden: (a) refused to furnish the requested memorandum; (b) failed to address the arguments regarding the major issues of the RIS, namely the long-term impairment resulting from the BOP's failure to treat Dowdell's cellulitis eruption for 4 days, or the damage to his kidneys resulting from the treatment required to save his leg due to the unprofessionalism by BOP medical staff between May 29 and June 1, 2010.

(ECF No. 2 at 16). Concerning the denial of his BP-10, the petitioner asserts in pertinent part:

> In his regional appeal, Dowdell argued: (a) the misidentification of his medical condition resulted from an improper investigation by FCI-Beckley staff; (b) offered statistical proof that Dowdell does not suffer from hypertension or hyperlipidemia, nor did he suffer from asthma; (c) the damage to his left leg was caused by FCI Beckley's medical staff's negligent behavior, during the period of May 29 through June 1, 2010.
>
> * * *
>
> In the denial, the Regional Director states: (a) despite Dowdell's diagnosis of asthma, neuropathy, anemia, osteoarthritis, high cholesterol and blood

5

>pressure, benign prostatic swelling, he does not meet RIS criteria; (b) there is no record in Dowdell's medical file that supports his claim of chronic kidney disease; (c) Dowdell is independent in his Activities of Daily Living ("ADLs"); (d) he is not experiencing deteriorating physical health that substantially diminishes his ability to function in a prison setting.
>
>The denial does not address Dowdell's arguments that: (a) Investigators looked no further than a listing of Dowdell's medications in denying his RIS request; (b) he does not suffer from asthma, high cholesterol or hypertension; (c) his severe leg damage is what substantially diminishes Dowdell's ability to function in correctional facility. As with the institution's failure to properly investigate Dowdell's filing, region certainly did not review his medical file. Dowdell's medical file contains seven GFR IDMS Blood tests that prove his claim of chronic kidney disease.

(ECF No. 2 at 17-18). The petitioner further asserts that, in his BP-11 appeal:

>[T]he Central Office denial simply recouches the three denials previously rendered. Again, Dowdell is told he has conditions he does not suffer from, while ignoring the issue of his leg swelling and chronic kidney disease. As with all three previous filings, the BOP functioned in bad faith when addressing them.

(*Id.* at 19).

The petitioner's Memorandum emphasizes that the condition of his legs limits his ability to stand in an environment where he is frequently required to stand in line for prolonged periods for meals, commissary, laundry, and health services. (*Id.* at 20-21). He further asserts:

>As detailed in this Memorandum, the BOP did not afford Dowdell an equitable evaluation of either his RIS request or his three appeals. Medication lists were misconstrued, something that would have been avoided had the reviewers taken the time and made the efforts to read the clinical notes written by doctors, nurse practitioners and physicians' assistants. A fair evaluation of Dowdell's claims of debilitative leg conditions would and should include an examination of his legs. No such exam was given. On appeal, Dowdell argued facts and reached conclusions that the warden, regional director and Central Office personnel ignored, opting instead to parrot previous findings. Only one conclusion is possible, considering these facts. Denial[] of Dowdell's request and his subsequent appeals was predetermined early in the process.

(*Id.* at 21).

## **ANALYSIS**

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a federal court may not modify a term of imprisonment once it has been imposed except that –

> (1) in any case – (A) the court upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction…

18 U.S.C. § 3582(c)(1)(A). As noted above, BOP Program Statement 5050.49 sets forth the procedures for such a reduction in sentence (hereinafter "RIS or "compassionate release").

A RIS request based upon medical circumstances may include any "terminal medical condition" in which the inmate's life expectancy is 18 months or less, or a "debilitated medical condition," which is defined as "an incurable, progressive illness" or a "debilitating injury from which [the inmate] will not recover." (ECF No. 1, Ex. B at 3). The Policy further states that "the BOP should consider a RIS if the inmate is: (1) completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or (2) capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." (*Id.*) The petitioner appears to be seeking a RIS based upon this second criterion in Section 3b. (*Id.* at 3). The petitioner's request was also considered under Section 4b of the Policy, which requires that an inmate meet the following criteria: (1) age 65 or older; (2) suffers from chronic or serious medical

7

conditions related to the aging process; (3) experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility; (4) conventional treatment promises no substantial improvement to their mental or physical condition; and (5) has served at least 50% of their sentence.  (*Id.* at 4).

As noted above, the petitioner contends that BOP personnel at every level of review have arbitrarily denied his RIS request based on incorrect information.  The petitioner requests that this court either grant his writ of habeas corpus and order his term of imprisonment reduced to time served, or order the Director of the BOP to file a motion with his sentencing court to modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) and 28 C.F.R. § 571.62(3).  This court cannot grant either form of relief.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Meachum v. Farno*, 427 U.S. 215, 225 (1976).  Moreover, while Congress has granted federal courts authority to reduce an inmate's sentence under section 3582(c), such authority is limited, and in the circumstances applicable to the instant case, such reduction may only be considered where the Director of the BOP has approved the inmate's RIS request and filed a motion in the sentencing court.  *See* 18 U.S.C. § 3582(c)(1)(A); *see also Glowka v. Zeigler*, 2014 WL 37087 at *4 (S.D. W. Va., Jan. 6, 2014); *Slate v. United States*, 2009 WL 1073640, at *3 (S.D. W. Va., Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release.")

It is well settled that the BOP has broad discretion in assessing whether a RIS or compassionate release is warranted and, in light of such discretion, most courts have found that "the BOP's decision regarding whether or not to file a motion for compassionate release is judicially unreviewable." *Crowe v. United States*, 430 Fed. App'x 484, 485 (6th Cir. 2011); *see also, e.g., Fernandez v. United States*, 941 F.2d 1488, 1493 (11th Cir. 1991); *Jarvis v. Stansberry*, 2008 WL 5337908 (E.D. Va., Dec. 18, 2008) (noting that the Fourth Circuit has not ruled on this issue, but recognizing that other circuits have found the BOP's decisions on compassionate release to be unreviewable).

In accordance with this persuasive authority, the undersigned proposes that the presiding District Judge **FIND** that this court lacks jurisdiction to review the BOP's denial of the petitioner's RIS request and that such claim is not proper for review under 28 U.S.C. § 2241. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the petitioner's Application for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and dismiss this matter from the docket of the court.

The petitioner is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, the petitioner shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and

Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Berger.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the petitioner.

March 10, 2015

Dwane L. Tinsley
United States Magistrate Judge